UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 22 2012
AT____O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

MARCUS MUNGO )
)
)
**Plaintiff(s)** )
)
vs. )
LUTHER BRIAN E C.O., SLATER JODY E C.O. )
DECKER DOUGLAS J C.O., MARSHALL RANDY J )
SGT, SMITH DAVID M C.O. )
DEEG CHRISTOPHER C.O. **Defendant(s)** )
SGT TOLEMAN. )

INMATE CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983

Civil Case No.: 9:

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2. Plaintiff: MARCUS MUNGO

   Address: GREEN HAVEN CORRECTIONAL FACILITY

   P.O. BOX 4000

   STORMVILLE NEW YORK 12582-4000

   Additional Plaintiffs may be added on a separate sheet of paper.

3. a. Defendant: LUTHER BRIAN E

   Official Position: C.O.

   Address: COXSACKIE CORRECTIONAL FACILITY

   P.O. BOX 200

   AUBURN, NEW YORK 12051

Form E (2) (a) . 1

| | |
|---|---|
| Defendant. | SLATER JODY E |
| Official Position | C.O. |
| Address | COXSACKIE CORRECTIONAL FACILITY |
| | P.O. BOX 200 |
| | COXSACKIE, NEW YORK 12051 |

| | |
|---|---|
| Defendant. | DECKER DOUGLAS J |
| Official Position | C.O. |
| Address | COXSACKIE CORRECTIONAL FACILITY |
| | P.O. BOX 200 |
| | COXSACKIE, NEW YORK 12051 |

| | |
|---|---|
| Defendant | MARSHALL RANDY J |
| Official Position | SGT |
| Address | COXSACKIE CORRECTIONAL FACILITY |
| | P.O. BOX 200 |
| | COXSACKIE, NEW YORK 12051 |

| | |
|---|---|
| Defendant | SMITH DAVID M |
| Official Position | C.O. |
| Address | COXSACKIE CORRECTIONAL FACILITY |
| | P.O. BOX 200 |
| | COXSACKIE, NEW YORK 12051 |

Form E (2) (a) 1(b)

b. Defendant: <u>DEEG CHRISTOPHER</u>
Official Position: <u>C.O.</u>

Address: <u>COXSACKIE CORRECTIONAL FACILITY</u>
<u>P.O. BOX 200</u>
<u>COXSACKIE, NEW YORK 12501</u>

c. Defendant: <u>TOLEMAN</u>
Official Position: <u>SGT</u>

Address: <u>COXSACKIE CORRECTIONAL FACILITY</u>
<u>P.O. BOX 200</u>
<u>COXSACKIE, NEW YORK 12051</u>

Additional Defendants may be added on a separate sheet of paper.

4. **PLACE OF PRESENT CONFINEMENT**

a. Is there a prisoner grievance procedure at this facility?
(X) Yes    ( ) No

b. If your answer to 4(a) is YES, did you present the facts relating to your complaint in this grievance program?
( ) Yes    (X) No

If your answer to 4(b) is YES:

(i) What steps did you take?
<u>The facts relating to the complaint</u>
<u>were presented at Coxsackie's grievance</u>

(ii) What was the final result of your grievance?
<u>Denied</u>

Form E (2) (a) . 2

If your answer to 4(b) is NO:

Why did you choose to not present the facts relating to your complaint in the prison's grievance program?

The facts relating tothe complaint were presented at Coxsackie's program.

c. If there is no grievance procedure in your institution, did you complain to prison authorities about the facts alleged in your complaint?

( ) Yes   (X) No

If your answer to 4(c) is YES:

(i) What steps did you take?

The facts relating to the complaint were presented at Coxsackie's grievance

(ii) What was the final result regarding your complaint?

Denied

If your answer to 4(c) is NO:

Why did you choose to not complain about the facts relating to your complaint in such prison?

NONE

## PREVIOUS LAWSUITS

5.

a. Have you ever filed any other lawsuits in any state and federal court relating to your imprisonment?

( ) Yes   (X) No

b. If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page.

Form E (2) (a) . 3

STATEMENTS OF FACTS

6. On Aug 23, 2009 approximately after the pm lunch run plaintiff was told to move to F-2 by defendant Sgt Toleman.

7. On Aug 23, 2009 defendant Toleman stood in front the plaintiff's cell gate and said in a soft manner, "hope you like our neckties." Defendant then whispered, "I got a noose for you nigga, it should make your head swell, I got a few good men waiting for you on F-2, don't get to comfortable, I decide where you go from now, I decide how you go, and I decide when you go, don't worry about the move, who gives a fuck, I supervise and run this shit, if I got to kick your fucking ass to get what I'm looking for, hey, welcome to mental anguish, cause this is going to follow you where ever you go."

8. On Aug 23, 2009 approximately after the pm lunch run plaintiff was moved to F-2 Keeplock Housing Unit by defendant Toleman.

9. Plaintiff without any reason, without any misbehavior report, without any security justification and without any need for space in general population was placed on disciplinary confinement status in a housing unit specifically designated for inmates on keeplock status.

10. Based on facility policy, plaintiff should not have been moved from General Population to a keeplock housing unit without at least a tier 2 misbehavior report.

11. On Aug 23, 2009 plaintiff was placed in cell 33 on F-2.

12. On Aug 23, 2009 plaintiff then awaited further keeplock procedures.

13. On Aug 23, 2009 at approximatly 6 pm defendant Slater arrived at at plaintiff's gate, then informed plaintiff that it was time for a urinalysis.

4

STATEMENT OF FACTS Con't

14. On Aug 23, 2009 defendant Slater then instructed plaintiff to place his hands in his pockets, to which plaintiff complied, defendant then instructed plaintiff to step out and step down to the dayroom, to which plaintiff complied.

15. On Aug 23, 2009 defendant Slater and plaintiff arrived in the dayroom. Defendant then instructed plaintiff to a table to the left where the urinalysis cup and instructions laid.

16. On Aug 23, 2009 present in the dayroom were defendants Smith and Luther. Both defendants started making remarks like, "Sgt Toleman got him over to the Southside." "He been over on the Northside for some time." "We got word that he recieves Legal Mail from the Rasta Priest." "Yeah A-Block knows what the Southside is for, you must got real power with that weed."

17. On Aug 23, 2009 with my hands in my pockets, defendant Slater read the instructions, to which I listened.

18. On Aug 23, 2009 defendant Slater asked plaintiff if he's going to provide a sample of urin, to which plaintiff responded yes. Defendant Slater then instructed plaintiff to remove his hands from his pockets to sign the form, to which plaintiff complied.

19. On Aug 23, 2009 defendant Slater then handed plaintiff a cup with the measurements and a side of glove, as he instructed plaintiff to the toilet.

20. On Aug 23, 2009 when plaintiff and defendant arrived at the toilet, defendant gave plaintiff the instructions as to the amount of urin would be necessary and the standing procedures, to which plaintiff complied.

STATEMENT OF FACTS Con't

21. On Aug 23, 2009 plaintiff stood in manner over the toilet as requested, allowing defendant to see him urinate in the cup.

22. On Aug 23, 2009 plaintiff placed the glove on his and placed his penis over the cup then providing the urin sample.

23. On Aug 23, 2009 as plaintiff started urinating, defendant looked on and said, "damn boy you got a big prick there, Sgt Toleman gonna like this report." At this time plaintiff became concerned, continuing to urinate in the cup. When plaintiff was finished defendant went on to say, "that prick is not even circumcised, I should take a hold of that." Plaintiff then placed his penis back into his pants after giving the sample sealed in the cup to the defendant.

24. On Aug 23, 2009 ignoring defendant's remarks, plaintiff awaited further instructions.

25. On Aug 23, 2009 defendant then told plaintiff to step over to the wall with his hands in his pockets for a pat frisk. Following defendant's instructions then placed his hands on the wall fingers flat and legs spread as defendant started the search. When the frisk was over the defendant said, "sorry Mungo I missed a spot, sorry where is the weed at?" to which plaintiff replied, "I have no weed on me or in my property sir." Defendant then said, "let me check," placing his hand down into the inside of plaintiff's undergarment, with his left hand holding plaintiff's side, defendant then placed his fingers to the plaintiff's anal. This act by defendant brought about a feeling of unease on plaintiff. Defendant then said don't even think about requesting for an area supervisor, I got this kid's ass today."

26. On Aug 23, 2009 not finding anything defendant Slater then

6

STATEMENT OF FACTS Con't

shoved the plaintiff into the wall using his body force as he requested weed by saying, "where's the weed at you fucking big pricking nigga," as defendant started pulling plaintiff to the floor by his shirt saying, "why your hands ain't in your god damn pockets nigga."

27. On Aug 23, 2009 defendants Smith, Luther, Deeg, Decker and some unknown officials rushed into the toilet after hearing the shouts from Slater.

28. On Aug 23, 2009 all these defendants started assisting defendant Slater by getting untop of plaintiff as they started stomping, kicking and slamming plaintiff's head to the floor.

29. On Aug 23, 2009 after handcuffing plaintiff, defendants continued beating plaintiff while he was handcuffed, with punches to the face as they screamed, "nigga" while they pulled on plaintiff's hair, then grabbing plaintiff's nuttsacks, then then exchanging with squeezes and punches.

30. On Aug 23, 2009 defendants took hold of plaintiff on the floor by dragging him to the dayroom still kicking him on the fl- floor.

31. On Aug 23, 2009 after defendants got plaintiff to the dayroom defendant Deeg got hold of the plaintiff picking him up while defendant Slater started jabbing plaintiff in the back with the baton. Defendant Deeg started punching plaintiff's face repeatedly at this time.

32. On Aug 23, 2009 all defendants started punishing plaintiff seperately, defendant Decker with defendant Deeg started slamming plaintiff into the wall by his face.

STATEMENT OF FACTS Con't

33. On Aug 23, 2009 after being slammed unto the floor defendants Smith, Slater and Luther started kicking plaintiff and stomping him repeatedly as they turned him over, kicking him in his stomach and nuttsacks, with the baton behind his legs.

34. On Aug 23, 2009 defendant Sgt Marshall with some unknown officials looked on then exchanged some punches to plaintiff's face. Sgt Marshall continued punching plaintiff in the stomach, then said, " this urinalysis request is a good cover up I ain't had nothing to do with it." After defendant Marshall was finished, the beating continued.

35 On Aug 23, 2009 after defendant Marshall ordered that the plaintiff be placed on a chair, defendant Deeg and Decker placed plaintiff on the chair and blind folded his eyes. Defendants then started making requests for weed, viagra pills and xtacy pills. Plaintiff at this time not being able to provide any of these substances was then subjected to more punishment by defendants.

36. On Aug 23, 2009 defendants then kicked plaintiff of the chair then replacing him back repeatedly. After replacing plaintiff back on the chair, as they punched plaintiff a number of times as they requested weed, viagra pills and xtacy pills.

37. On Aug 23, 2009 defendants then kneeled on plaintiff's back after he was kicked to the floor. While on the floor defendants started wringing plaintiff's wrist as he screamed for help throughout the entire ordeal. At this time defendants were saying, "torture ain't it nigga, we'll hunt you down if you report this. At this time plaintiff was bleeding profusely and in alot of pain.

38. On Aug 23, 2009 defendants then stood plaintiff up as they removed the blindfold from of his eyes, defendants again started punching plaintiff in the face while other defendants

STATEMENT OF FACTS Con't

looked on.

39. On Aug 23, 2009 defendant Deeg and Decker proceeded to escort plaintiff to the medical unit. Leaving the dayroom defendants were wringing plaintiff's wrists, one after the other. In the stairways defendants slammed plaintiff's face into the walls of the stairways.

40. On Aug 23, 2009 while defendants escorted plaintiff to the medical unit, defendants continued to wring plaintiff's wrist and raising his arms beyond measure.

41. On Aug 23, 2009 plaintiff arrived at the medical unit where pictures of his injuries were taken. At this time nurse Kummer were present in the dayroom.

42. On Aug 23, 2009 after the nurse reported the injuries plaintiff was then escorted to SHU.

43. On Aug 23, 2009, after being placed in SHU plaintiff was urinating, vomiting, coughing, deficating and bleeding blood through my nostrils.

The injuries claimed are as follows:

a

44. Since the August 23, 2009, I have been experiencing head aches, chest pain, lower back pain, pain on my right leg around the chin area, and irregular pain and swelling on my ankle and which remains with permanent deformation.

45. Upon arriving at SouthPort Correctional Facility on a disciplinary transfer, I brought my physical complications (chest pain and constant snapping) to the medical staff, and I was scheduled for chest and lower back x-rays.

46. After a modification on my disciplinary sanction, I was transferred to Auburn Correctional Facility. At Auburn I continued to bring my physical complication (e.g., head aches, chest pain, lower back pain and tightness on my right side.

47. I was scheduled one time to see a doctor for my back pain, despite my regular requests to see my provider during sick interviews with nurses. After making several medical complaints, a male nurse stated to me that I was scheduled to see the doctor soon.

48. I was not seen after my complaints by a doctor. Then when I was transferred to Green Haven Correctional Facility, I continued to bring my physical complications to the medical staff. The doctor who seen me stated that there are no records of my complaint on file originating at Auburn.

49. After having an x-ray taken of my right leg, I have been receiving follow-up call-outs to address my physical complications. And I am awaiting for medical to examine my lower back and chest for the pain and complications that I continue to bear and live with.

50. At all time of the alleged incidents and at all times relevant thereto, Defendants acted under the color of state law, statue, policy, procedure, regulation, and custom and/or usage.

## LEGAL CLAIMS

51. I reallege paragraphs 1 through 50 with the same force and effect as if fully set forth as to each cause of action herein.

52. I am entitled to recover damages from the defendants and each of them based on the theories of liability herein after enumerated in counts 1 through 6, and under such other theories of liability as may be appropriate based upon the facts alleged herein or as revealed during discovery.

## COUNT I: VIOLATION OF CONSTITUTIONAL RIGHTS

53. Sergeant Toleman for the sole purpose of intimidating, harassing, and perpetrating an assault, arranged for plaintiff to be moved from general population, A-block, to a disciplinary housing unit, F-Block, used to house inmates serving a sanction of keep lock confinement (restriction to living quarters). Said actions deprived plaintiff of his right to be free from cruel and unusual punishment by the use of unlawful force, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, which are actionable under 42 USCA § 1983, for which said Defendant is individually liable.

COUNT II: VIOLATION OF CONSTITUTIONAL RIGHTS

54. Defendants Slater, Luther, Smith, Decker, and Deeg willfully and knowingly perpetrated an assault and battery by using physical force for the purpose of maliciously, and sadistically causing harm to plaintiff, and by doing so, deprived plaintiff of his right to be free of cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and applicable sections of the New York State Constitution Article 1, §§ 5 and 6, Correction Law § 137 (5); N.Y. Comp. Codes R. & Regs., tit 7 § 251-1.2, tit 9 § 7507, which are actionable herein under 42 USC § 1983, for said Defendants are individually and severally liable.

COUNT III: NEGLIGENCE

55. The negligent conduct of Marshall when he failed to act and prevent the unlawful use of force, on plaintiff, was done with willful and wanton indifference to and deliberate disregard for the rights of plaintiff. Plaintiff is thus entitled to punitive damages.

COUNT IV: VICARIOUS LIABILITY, DUTY TO INTERVENE

56. Defendant Marshall had a duty to intervene when fellow officers violate plaintiff's constitution, statutory, and civil rights. Nonetheless, this defendant failed to intercede when he knew, or reasonably should have known that his co-defendants were depriving inmates, in this case, plaintiff, of his constitutional, statutory, or civil rights.

57. Thus, Defendant Marshall intentionally, and/or with gross negligence, or conscious indifference to the consequences, failed to intercede on the plaintiff's behalf when he knew that they knew that their colleagues were subjecting the plaintiff to a deprivation of his rights. Defendant by failing to intervene as an officer and supervisor is responsible for the constitutional crimes and torts aforementioned. Plaintiff is thus entitled to punitive damages against Defendant Marshall.

COUNT V: CONSTITUTIONAL VIOLATION RIGHTS

58. Defendant Marshall, who supervised the housing unit and the officers complained of, encouraged and tolerated, and condoned the use of physical force, which was maliciously and sadistically used to cause harm to plaintiff as described in the aforementioned paragraphs. Defendant Marshall looked on and failed to intervene and take control of Defendants Slater, Smith, Decker, Luther, and Deeg so as to prevent the violation of plaintiff's constitutional rights. Plaintiff is thus entitled to punitive damages against Defendant Marshall.

COUNT VI: VIOLATION OF CONSTITUTIONAL RIGHTS

59. At all times pertinent hereto, Defendants Toleman and/or Marshall, who supervised officers complained of, tolerated the housing movement policy and practice described in the aforementioned paragraphs. Defendants' policies and practices were the moving forces, proximate cause, and/or affirmative link behind the conduct causing plaintiff's injuries. Therefore, Defendants Toleman and Marshall are liable for said violations of plaintiff's Constitutional rights

pursuant to 42 USC § 1983.

**WHEREFORE,** Plaintiff prays this Court enter judgment against defendants and award the following:

(a) $100,000.00 dollars in compensatory damages for Plaintiff;

(b) $100,000.00 dollars in punitive damages for Plaintiff against each defendant;

(c) Appropriate injunctive relief, in the form of directing the Coxsackie Correctional Facility's supervisors and officials to either annul or amend existing policies thatr permit the unnecessary and misue of force, or promulgate policies, rules and procedures that will help monitor staff misconduct and deter the use of unnecessary, unlawful, and excessive use of force by prison officials;

(d) Appropriate declaratory relief, pursuant to 28 USC §§ 2201 and 2202, that acts and/or omissions deprived plaintiff of his constitutional, statutory, and regulatory rights;

(e) Awarding Plainiff the cost for this action, including reasonable attorney fees pursuant to 42 USC § 1988; and

(f) Such other and further relief as to this Court may deem just, proper, and equitable.

I declare under the penalty of perjury that the foregoing it true and correct.

Dated: August 14, 2012

                                          Respectfully submitted,

                                          *Marcus Mungo*

                                          Marcus Mungo(98A4470)
                                          594 Route 216 - POB 4000
                                          Stormville, New York 12582